| TOBIAS, J.,
concurring.
I respectfully concur in the result.
I disagree with the majority’s conclusion that the claim of Ted W. Hoyt, executor of the Succession of David A. Jeansonne, against W. Philip Clinton, the Jones Walker law firm, and their professional liability insurer is not prescribed/preempted under La. R.S. 9:5605. My review of the record satisfies me that the trial court is not manifestly erroneous or clearly wrong in concluding that the plaintiffs claim is prescribed/preempted.
As the Supreme Court notes in Reeder v. North, 97-0239 (La.12/9/97), 701 So.2d 1291, La. R.S. 9:5605 A requires that a claim for legal malpractice be filed “within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered;.... ”
The promissory note signed by Mr. Jeansonne, bearing a date of 17 July 1998, reads verbatim in pertinent part as follows:
DAVID A. JEANSONNE, whose address is OMNI Energy Services Corp., 4500 NE Evangeline Thruway, Caren-ero, Louisiana 70520 (the “Maker”) for value received HEREBY UNCONDITIONALLY PROMISES TO PAY to R. PATRICK MORRIS, whose address is OMNI energy Services Corp., 4500 NE Evangeline Thruway, Carenero, Louisiana 70520 (the “Payee”), in | ¡¡lawful money of the United States of America the principal amount of ONE MILLION FIVE HUNDRED THOUSAND & 00/100 Dollars (U.S.$1,500,000.00) on July 17, 1999 (the “Maturity Date”), together with interest on the unpaid principal balance of this Note, as outstanding from time to time, commencing on the date of this Note, and continuing until this Note is paid in full.
This Note has been executed and delivered pursuant to and in accordance with the terms and conditions of that certain Stock Purchase Agreement, dated July 17, 1998, by and between Maker and Payee, (the “Agreement”), and is subject to the terms and conditions of the Agreement, which are, by this reference, incorporated herein and made a part hereof. Capitalized terms used in this *732 Note without definition shall have the respective meaning set forth in the Agreement.
In pertinent part, the stock purchase agreement dated 17 July 1998 reads:
WHEREAS, Seller owns an aggregate of 100 shares of the common stock, no par value per share (the “Shares”) of American Aviation Incorporated (the “Company”);
* * *
1. Subject to the terms and conditions herein stated, Seller [R. Patrick Morris] agrees to sell and Purchaser [David A. Jeansonne] agrees to purchase the Shares as of the date hereof for consideration, the receipt and sufficiency of which is hereby acknowledged by Seller.
2. Purchaser hereby delivers to Seller (i) $1,000,000 (the “Cash Purchase Price”) and (ii) the promissory note attached hereto as Exhibit A (the “Promissory Note”).
* * *
4. Seller shall use at least $500,000 of the Cash Purchase Price (the “Reinvestment Amount”) to purchase shares of common stock, $.01 par value per share (the “Omni Common Stock”), of Omni Energy Services Corp. (“Omni”).... Such purchases may be made at any one or more times and from time to time on the open market, from Omni or otherwise on or prior to the first anniversary of the date of this Agreement. On the earlier to occur of (i) the date of Mandatory Prepayment of the Promissory Note or (ii) the first anniversary of the date of this Agreement, Purchaser may set-off any- excess of the Reinvestment Amount over the amount of money actually invested by Seller in the Omni Common Stock ... on such date against amounts otherwise payable pursuant to the Promissory Note. Any such amounts set-off by Purchaser in good faith, whether or not ultimately [^determined to be justified, will not constitute an event of default under the Promissory Note....
In the case at bar, the “act, omission, or neglect” complained of is Mr. Clinton’s alleged failure to include a provision in the promissory note and/or stock purchase agreement requiring that the $1,500,000 balance for the purchase price of the 100 shares of common stock of American Aviation, Incorporated owned by R. Patrick Morris would not be due earlier than one year from its date and that the payment of the $1,500,000 was contingent upon the secondary public offering of Omni stock within one year, coupled with Mr. Jean-sonne being able to realize $1,500,000 from the secondary public offering.
The variation is obvious. Neither the stock purchase agreement nor the promissory note reference the condition that Mr. Jeansonne had to realize $1,500,000 from the secondary public offering. The trial court finds that the note was drawn as Mr. Jeansonne directed. This finding of fact is not manifestly erroneous or clearly wrong because conflicting evidence was presented on the point The trial court’s findings are reasonable. When evidence conflicts, the factfinder’s choice between conflicting versions of facts can almost never be manifestly erroneous or clearly wrong. Stobart v. State, through Dept. of Transportation and Development, 617 So.2d 880, 882 (La.1993). To be manifestly erroneous or clearly wrong, other substantial evidence refuting the finding must be presented, something that is absent in the present case. Id.
*733 A cursory examination of the two-page promissory note and two-page stock purchase agreement addressing a substantial sum of money (i.e., $1,500,000) would disclose to any sophisticated businessman, even an ordinary, unsophisticated individual, that the promissory note and stock purchase agreement lacked a conditional provision as the plaintiff now contends was intended. The record supports the trial court’s finding that Mr. Jeansonne was a sophisticated | ¿businessman, an individual who was decisive when making decisions regarding businesses in which he had an interest; the record also supports a conclusion that Mr. Jeansonne was from time to time, as I would characterize it, somewhat heedless.[1]
A person who signs a document is presumed to know its contents. Mr. Jean-sonne, who the trial court found to be a sophisticated businessman, is deemed to have read that which he signed before signing it. When the documents were delivered to Mr. Jeansonne for execution (probably on or after 24 July 1998),[2] the previously planned secondary public offering of Omni stock had fallen through. Thus, Mr. Jeansonne, who directed that the contents of the promissory note and stock purchase agreement relate to the secondary public offering, should have known that the condition that he wanted relating to his realizing $1,500,000 was not in the note or agreement and the note had to be paid when it was due. Moreover, a fair reading of the record reflects that Mr. Jeansonne signed the documents because he became impatient with the delays associated with making sure that the most tax-advantaged (tax-efficient) transaction occurred and in having documents prepared and executed.
The allegedly wrongful act, if any, by Mr. Clinton occurred when the documents were presented to Mr. Jeansonne without the conditional language. Actual damage occurred when Mr. Jeansonne signed the promissory note and stock purchase agreement bearing a date of 17 July 1998 and delivered both documents to Mr. Morris, all of which happened at the latest on 31 December 1998. The damage occurred long before Mr. Morris demanded payment of the note. The note was a “thing”[3] under the Louisiana law having value at the moment of its execution and delivery into the hands of the payee. Mr. Morris could have negotiated, | .^pledged, hypothe-cated (and so forth) the note once he had it in his possession. That the note was due and payable at a date in the future is immaterial as to its then present value; it had a present value at the moment of delivery. The suit filed on 16 March 2000 was untimely, falling more than one year after 17 July 1998 (the date of the promissory note and stock purchase agreement) and 18 November 1998 (the date mentioned in the 31 December 1998 letter advising that the stock sale closed). The trial court’s finding is thus neither manifestly erroneous nor clearly wrong.
Accordingly, I would merely affirm the trial court on the prescription/ preemption issue and pretermit a discussion of the remainder.

.As Mr. Hoyt described it, Mr. Jeansonne would "sell an asset to raise cash to do something on a continually downward spiral.”

. The promissory note and stock purchase agreement were apparently backdated.

. La. C.C. art. 473.